UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Phillip Ricciardi</u>

    v.                                      Civil No. 06-cv-092-JD

<u>Service Credit Union et al.</u>


<u>O R D E R</u>

Phillip Ricciardi, proceeding pro se, has sued Service Credit Union, as well as Chubrich & Harrigan, P.A., and several unnamed parties who allegedly acted as its agents, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"). Service Credit Union ("Service Credit") has moved to dismiss Ricciardi's claims against it on the ground that it is not a "debt collector" within the meaning of the FDCPA and that the complaint therefore fails to state a claim for relief against Service Credit. Service Credit also seeks to collect its attorneys' fees and costs from Ricciardi on the ground that he brought this action "in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k(a)(3). Neither Ricciardi nor Chubrich & Harrigan has filed any response to the motion.[1]

In ruling on a motion to dismiss for failure to state a claim, the court accepts all of the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences

---

[1] By operation of L.R. 7.1(b) and Fed. R. Civ. P. 6(a), the deadline for responding to the motion was April 27, 2006.

from them in the plaintiff's favor.  E.g., Stanton v. Metro Corp., 438 F.3d 119, 123 (1st Cir. 2006).  Such a motion cannot be granted "unless it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Id. at 123-24.  Furthermore, the court must construe Ricciardi's pro se amended complaint liberally. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004); Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Ricciardi alleges that he "signed documents which lead [*sic*] him to believe that Defendant Bank was going to lend [him] an unsubstantiated amount to be used for consumer goods . . . ." Compl. ¶ 9.  According to the complaint, Chubrich & Harrigan, a law firm (the "law firm"), later began efforts on Service Credit's behalf to collect a $10,466.95 debt purportedly arising out of this "transaction."  Id. ¶ 10.  Ricciardi asserts that these efforts, which included correspondence and a lawsuit against him in state court, violated various provisions of the FDCPA, and that Service Credit is "directly responsible for the illegal actions of the debt collector under the Doctrines of Respondeat Superior and Apparent Authority, maintenance and champerty."  Id. ¶ 11.

"The Fair Debt Collection Practices Act regulates debt collectors, not creditors."  Shula v. Lawent, 359 F.3d 489, 492

(7th Cir. 2004); see also, e.g., Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 85 (2d Cir. 2003); Pollice v. Nat'l Tax Funding, 225 F.3d 379, 403 (3d Cir. 2000).  The FDCPA does reach, however, "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  Courts have applied this exception to creditors whose collection efforts include correspondence from a lawyer lacking any "meaningful involvement" in the efforts themselves.  See, e.g., Nielsen v. Dickerson, 307 F.3d 623, 634-39 (7th Cir. 2002); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236-37 (5th Cir. 1997).

     At places in his complaint, Ricciardi hints at such a theory, alleging that Service Credit "made the decision that [he] should be sued by Defendant Law Firm . . . .  Defendant Law Firm based his [sic] information upon the order of Defendant Bank upon reviewing only cursory lawyer information containing consumers [sic] name, address, and the amount of alleged debt."  Compl. ¶ 99.  Although "merely being told by a client that a debt is overdue is not enough" to constitute meaningful attorney involvement, Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 304 (2d Cir. 2003), the balance of Ricciardi's allegations demonstrate that the law firm's contributions to the collection efforts against him far surpassed this standard, and bely his

charge that the firm had only "cursory lawyer information." Ricciardi affirmatively states, for example, that the law firm sent him copies of his credit card application, agreement, and related documentation when he requested them, Compl. ¶ 16, indicating that its collection efforts were in fact guided by more than simply his name, address, and the amount of the debt and, furthermore, that the law firm was dealing directly with Ricciardi in trying to collect the debt.  The complaint therefore fails to state a claim that the law firm so lacked any meaningful involvement in the collection efforts as to subject Service Credit to the FDCPA for falsely using the law firm's name to pursue those efforts on its own.  Cf. Nielsen, 307 F.3d at 635-39 (concluding that creditor liable under FDCPA for letters sent in name of attorney who possessed no information as to individual debtors, "played barely more than a ministerial role" in handling debtors' responses to letters, and never took legal action).

Indeed, the thrust of Ricciardi's complaint is not that the law firm was insufficiently involved in the collection efforts against him, but that the firm took its marching orders from Service Credit, making it vicariously liable for the firm's alleged violations of the FDCPA.  Because the FDCPA applies only to "debt collectors," however, courts have consistently rejected attempts to impose FDCPA liability on a creditor for the actions of those who collect its debts based on respondeat superior or

similar theories.  See, e.g., Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996); Doherty v. Citibank (S.D.) N.A., 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005); Conner v. Howe, 344 F. Supp. 2d 1164, 1170 (S.D. Ind. 2004); Caron v. Charles E. Maxwell, P.C., 48 F. Supp. 2d 932, 936 (D. Ariz. 1999); Hart v. GMAC Mtg. Corp. (In re Hart), 246 B.R. 709, 731 (Bkrtcy. D. Mass. 2000).  The complaint therefore fails to state a claim against Service Credit under the FDCPA.

Although, as Service Credit points out, Ricciardi has characterized his lawsuit as "an action . . . for Defendant's [*sic*] violation of 15 U.S.C. § 1692, A.K.A. the Fair Debt Collection Practices Act," Compl. ¶ 1, the complaint also alleges that Service Credit and the law firm "entered into a criminal conspiracy" to defraud him in violation of a number of other laws.  Id. ¶ 42.  Specifically, Ricciardi charges that the defendants broke federal laws regulating the mails, including 18 U.S.C. § 1341 and 39 U.S.C. §§ 3001 and 3005, Compl. ¶¶ 38, 40, as well as "tort laws, unfair trade practices statutes" and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO").  Compl. ¶ 42.  In accordance with its obligation to construe Ricciardi's pro se complaint liberally, the court will consider these claims so far as the complaint permits.

The federal mail fraud statute, 18 U.S.C. § 1341, is a

criminal law that does not authorize private citizens to bring civil actions against alleged offenders.  See, e.g., Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 408-09 (8th Cir. 1999); Ryan v. Ohio Edison Co., 611 F.2d 1170, 1178-79 (6th Cir. 1979); Bell v. Health-Mor, Inc., 549 F.2d 342, 346 (5th Cir. 1977); Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 17 (D. Mass. 2004). Similarly, 39 U.S.C. §§ 3001 and 3005 empower the Postal Service to dispose of various categories of "nonmailable matter" and to take steps to prevent its mailing.  Even if these statutes could be construed to provide a private right of action, which strikes the court as a dubious proposition, the complaint does not suggest how the correspondence between the law firm and Ricciardi might qualify as "nonmailable matter."

Any RICO claim also fails because Ricciardi has alleged only that the conspiracy between Service Credit and the law firm is "a predicate offense for a civil RICO claim," Compl. ¶ 42, and not the existence of any "enterprise."  See Compagnie De Reassurance D'Ile de France v. New England Reassurance Corp., 57 F.3d 56, 91-92 (1st Cir. 1995).  Finally, the complaint's allusions to "tort laws" and "unfair trade practices statutes" are simply too vague to state a claim for relief.[2]  Although a pro se litigant is

---

[2]The same is true of the complaint's citations to the Equal Protection Clause and the "FCEUA" and "UTPCPL," anagrams for Pennsylvania statutes that have no apparent application here.

6

generally entitled to the benefit of every doubt, this approach "does not require judges . . . to take up the slack when a party elects to represent himself." Eagle Eye Fishing Corp. v. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994). The complaint fails to state a claim against Service Credit.

In addition to dismissal, Service Credit seeks to recover the attorneys' fees and costs expended in defending itself in this action from Ricciardi. "On a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorneys' fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). Although circuit courts have not expounded upon this standard to any real degree, the Seventh Circuit has ruled that it is not satisfied where "a reasonable lawyer could have argued from [the] facts" that the defendant violated the FDCPA, Horkey v. J.V.D.B. & Assocs., 333 F.3d 769, 775 (7th Cir. 2003), while the Fourth Circuit has ruled that an action "utterly without factual foundation" did meet the test, Chaudhry v. Gallerizzo, 174 F.3d 394, 411 (4th Cir. 1999).

Service Credit's motion does not explain how this action satisfies the standard set out in section 1692k(a)(3), except to say that "the complaint establishes no basis for liability and instead relies upon a statute which expressly excludes the

defendant from liability . . . ." Mot. Dismiss ¶ 23. But, as the cases just cited indicate, "[f]or the court to appropriately award fees under [section 1692k(a)(3)] it is not enough that the plaintiff's case is ultimately dismissed." <u>Russell v. Equifax A.R.S.</u>, 1994 WL 672648, at *5 (N.D.N.Y. Nov. 23, 1994) (internal quotation marks omitted), <u>rev'd on other grounds</u>, 74 F.3d 30 (2d Cir. 1996). Because Service Credit has not shown that this action "was brought in bad faith and for the purpose of harassment," its request for fees and costs is denied. <u>Lemieux v. Jensen</u>, 2004 WL 302318, at *3 (S.D. Cal. Jan. 29, 2004).

## Conclusion

For the foregoing reasons, Service Credit's amended motion to dismiss (document no. 9) is GRANTED, except insofar as it makes a request for attorneys' fees and costs, which is DENIED. Service Credit Union's status as a defendant is TERMINATED.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 11, 2006

cc: Peter V. Doyle, Esquire
    Patrick F. Harrigan, Esquire
    Philip Ricciardi, pro se